# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **MARTHA HOLMES,** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Civil No. 3:11-cv-0594 |
| v. ) | **Judge Sharp** |
| ) | |
| **ALIVE HOSPICE, INC.** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM

Plaintiff's complaint before this Court alleges unlawful discrimination and retaliation on the basis of disability in violation of the American's with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and unlawful interference with rights and retaliation under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. Defendant Alive Hospice, Inc. has filed a Motion for Summary Judgment on all claims in the Complaint. This motion, for the reasons that follow, will be granted in part and denied in part.

### I. FACTUAL BACKGROUND

Defendant Alive Hospice, Inc. is a non-profit hospice care organization doing business in Nashville, Tennessee. Plaintiff is a former employee of Defendant. In April 2008, Plaintiff was hired by Defendant as a part-time, on-call ("PRN") licensed practical nurse ("LPN") on a "flex team" which provided continuous care to patients. In April 2009, Plaintiff was hired for a full-time position in the Defendant's Call Center.

In December 2009, Plaintiff's primary care physician requested her off work from December 3, 2009 to December 13, 2009 for "…nerves; a lot of stuff going on in [her] life." (Docket No. 48 ¶ 25). Then, on January 21, 2010, Plaintiff requested FMLA leave from that date to April 16, 2010 for surgery related to her C5 vertebrae pressing into her spinal cord. (Docket No. 48 ¶ 29) (Docket No. 51 ¶ 20). Although the start date of Plaintiff's FMLA leave is in dispute, this Court, in an effort to construe all facts in favor of the non-moving Plaintiff, will assume for purposes of summary judgment that Plaintiff's twelve-week FMLA leave started on January 21, 2010 (as alleged by Plaintiff). (Docket No. 51 ¶ 21).

Plaintiff anticipated being released from her doctor's care on April 15, 2010, the date of Plaintiff's post-surgery follow-up appointment; however, according to Plaintiff, the vertebrae in her neck were not fusing properly, and her doctor recommended that she remain off of work for an additional four weeks. (Docket No. 51 ¶ 23-24). Accordingly, on April 15, 2010, Plaintiff brought Defendant a doctor's note further excusing her from work until May 17, 2010, at which time she would be reevaluated. (Docket No. 48 ¶ 33). Defendant agreed to provide Plaintiff with additional leave through May 3, 2010, and Plaintiff signed a request for leave form that described her leave ending on that date. (Docket No. 51 ¶ 27). Around May 4, 2010, when Plaintiff did not return to work, Defendant changed Plaintiff's status from a full-time employee to PRN status. (Docket No. 51 ¶ 37) (Docket No. 48 ¶ 37).

On May 16, 2010, Plaintiff's doctor extended her medical leave a final time through May 26, 2010 for reasons that are not explained on the medical release. (Docket No. 51 ¶ 39) (Docket No. 51 ¶ 40). When Plaintiff was finally released to work, she notified Defendant of her availability. (Docket No. 51 ¶ 42). Defendant's representative, Edith Scott, told Plaintiff that she would contact Plaintiff's supervisor, Kathy Owens, to let her know Plaintiff was available to

work. (Docket No. 51 ¶ 42). Scott also told Plaintiff not to contact Owens. Id. When Plaintiff did not hear from Owens, Plaintiff called Owens to inquire about available shifts. (Docket No. 51 ¶ 43). Owens told Plaintiff that she did not have any available work for Plaintiff because she needed registered nurses ("RN's"), not LPN's to cover shifts. (Docket No. 48 ¶ 48). However, when Plaintiff contacted the Call Center on another occasion to inquire about available shifts, another LPN, Cynthia Mayberry, told Plaintiff that there were open shifts with LPN availability. (Docket No. 51 ¶ 44). Plaintiff was not scheduled for any shifts, and on July 23, 2010, Defendant terminated Plaintiff pursuant to Defendant's policy that a PRN who did not work two shifts in 30 days was subject to termination. (Docket No. 48 ¶ 51).

In June 2010, Defendant had an opening for the position of nurse authorization coordinator, and Plaintiff applied. (Docket No. 51 ¶ 60). However, she was not qualified for the position because she did not have insurance experience in billing, authorization, and eligibility, and the position was filled by someone else. (Docket No. 48 ¶ 73, 76).

On November 3, 2010, Plaintiff filed an EEOC charge alleging discrimination between April 16, 2010 and July 1, 2010 due to her disability and use of FMLA leave. The EEOC charge alleged that Defendant had significantly reduced Plaintiff's hours due to her disability and upon her return from FMLA leave, and that Plaintiff had been denied work even though positions were available. (Docket No. 48 ¶ 81). On January 6, 2011, Plaintiff filed a second EEOC charge alleging that she was terminated from her employment and denied the position of authorization nurse coordinator due to her disability and in retaliation for filing her initial EEOC charge. (Docket No. 48 ¶ 82).

Plaintiff's complaint before this Court alleges unlawful discrimination based on her disability in violation of the American's with Disability Act, and unlawful retaliation under the ADA as a

result of a complaint Plaintiff made to Defendant's representative, her request for medical leave, and her EEOC discrimination complaints. Plaintiff also claims unlawful interference with her FMLA rights, failure to be reinstated after exercising her FMLA rights, and retaliation under the FMLA based on her demotion, termination and Defendant's failure to hire her for the position of authorization nurse coordinator.

## II. APPLICATION OF THE LAW

A party may obtain summary judgment if the evidence establishes there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in his or her favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, (1986). However, the nonmoving party must rely on more than "[c]onclusory assertions, supported only by Plaintiff's own opinions." Arendale v. City of Memphis, 519 F.3d 587, 605 (6th Cir. 2008). Rather, Plaintiffs must "set out specific facts showing a genuine issue for trial." Harvey v. Campbell County, Tenn., 453 Fed. Appx. 557, 561 (6th Cir. 2011).

   a. **Exhaustion of Administrative Remedies for ADA Accommodation Claim**

As an initial matter, Defendant argues that the Court's jurisdiction related to her ADA claims must be limited to the scope of her EEOC charges, which only encompass Defendant's acts in demoting and terminating Plaintiff and in not hiring her for the position of authorization

4

nurse coordinator. From this argument, the Court infers that Defendant's position is that Plaintiff did not exhaust her administrative remedies regarding her failure to accommodate claim.

Defendant is correct in its assertion that this Court would not have jurisdiction over Plaintiff's failure to accommodate claim if such a claim was absent from her EEOC charges. See, Jones v. Sumser Retirement Vill., 209 F.3d 851, 853 (6th Cir. 2000) (finding that the Court does not have subject matter jurisdiction over an ADA claim "unless the claimant explicitly files the claim in an EEOC charge or the claim can reasonably be expected to grow out of the EEOC charge.") Plaintiff's EEOC charges do not explicitly claim that Defendant failed to reasonably accommodate her disability. See Plaintiff's EEOC Charge, Docket No. 41-3 p. 20-21 (alleging discrimination based on a reduction in hours, demotion, termination, and a failure to hire Plaintiff for the position of authorization nurse coordinator due to her disability). However, the Court finds that Plaintiff's failure to accommodate claim may reasonably be expected to grow out of her EEOC charges.

Defendant relies on Jones to support its position. In Jones, the Sixth Circuit found that the Plaintiff's ADA termination claim and her accommodation claim differed "in kind and date," and the facts relevant to the plaintiff's termination and alleged failure to accommodate were different. Jones, 209 F.3d at 853-54. In that case, the plaintiff's failure to accommodate claim was based on events occurring prior to her termination when her employer failed to accommodate her medically prescribed physical limitations while on the job. Id. at 853. Her termination claim, on the other hand, was based on the employer's acts in firing her after she went on medical leave for her back injuries. Id.

In contrast, the facts in this case reveal that Plaintiff's termination claim and failure to accommodate claim are based on the same set of facts occurring around the same time period.

5

Unlike Jones where the alleged lack of accommodation had already occurred prior to termination, the claimed lack of accommodation here was additional requested medical leave that Defendant allegedly sought to avoid by demoting and then terminating Plaintiff. See Dunn v. Chattanooga Pub. Co., 993 F.Supp.2d 830, 842 (E.D. Tenn. 2014) ("[Plaintiff's] discharge claim and accommodation claim are intertwined: she was terminated because her disability required she obtain medical leave; she was denied medical leave as an accommodation.") This Court, therefore, assumes jurisdiction over Plaintiff's ADA accommodation claim.

### b. ADA Disability Discrimination Claims

Title I of the Americans with Disabilities Act ("ADA") provides that a covered employer "shall [not] discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." Whitfield, v. Tennessee, 639 F.3d 253, 258 (6th Cir. 2011) (citing 42 U.S.C. § 12112(a)). In the Sixth Circuit, a prima facie case of disability discrimination based on indirect evidence requires the plaintiff to show that: "1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced." Id. at 259. The ADA defines disability in three ways: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))." 42 U.S.C. § 12102 (1).

In her complaint, Plaintiff alleges that Defendant discriminated against her based on her disability due to Multiple Sclerosis. (Docket No. 1 ¶¶ 8-9). Because Plaintiff has failed to offer any proof that her Multiple Sclerosis was a disability within the meaning of the ADA, however, her claims of disability discrimination must be dismissed.

Plaintiff has failed to offer evidence sufficient to raise a genuine issue of material fact that she suffered from Multiple Sclerosis ("M.S."), and, if so, that her M.S. substantially limited one or more major life activities during the relevant time period. In general, major life activities include, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102 (2)(A).

The Court has been unable to identify, and neither party has pointed to, any written record showing that Plaintiff has ever been diagnosed with or treated for M.S. The only evidence Plaintiff offers to show that she was diagnosed with or treated for M.S. are Plaintiff's self-serving statements in her deposition that she was diagnosed with M.S. in January 2010 while on medical leave. Plaintiff's uncorroborated testimony does not raise a triable issue. See Mitchell v. Toledo Hosp., 964 F.2d 577, 584-85 (6th Cir. 1992) (finding that Plaintiff's hearsay affidavit was not proper because it was not made on personal knowledge and did not set forth "facts" that would be admissible into evidence, and, even if it did, it did not raise triable issue because the statements contained therein were nothing more than the subjective belief of plaintiff).

Notably, Plaintiff does not even mention that she had M.S. in her Statement of Undisputed Facts or her Response to Defendant's Motion for Summary Judgment. Instead, Plaintiff maintains the following regarding her medical leave: she initially requested time off of

work due to personal issues causing stress in her life (Docket No. 51 ¶ 13), she next submitted a request for FMLA to have surgery related to problems with her C5 vertebrae pressing into her spinal cord (Docket No. 51 ¶ 20), she then needed additional time to heal from surgery (Docket No. 51¶ 24) and, finally, she asked for more time off because her doctor "recommended another two weeks off of work, until May 26, 2010." (Docket No. 51 ¶ 39). Accordingly, Plaintiff has failed to offer sufficient evidence that she had M.S. and that her M.S. substantially limited one or more major life activities. Therefore, she cannot qualify as disabled under the ADA.

In her Response to Defendant's Motion for Summary Judgment, Plaintiff argues that she qualifies as disabled under the "regarded as" definition of disability. The ADA says an individual meets the requirement of "being regarded as having such an impairment" so long as "the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102 (3)(A). However, this provision does not apply to transitory impairments with an actual or expected duration of 6 months or less. 42 U.S.C. § 12102 (3)(B).

In this case, Plaintiff has not shown that the Defendant was aware Plaintiff claimed to have had M.S. or any other impairment that was not transitory. In an effort to support her argument, Plaintiff cites only two pieces of evidence: Plaintiffs' doctors notes, which were provided to Defendant in connection with Plaintiff's FMLA leave, and a phone call Owens made to Plaintiff during Plaintiff's medical leave to see how she was doing. (Docket No. 46 p. 31). However, the Court could find nothing in the record showing that Owens was made aware of Plaintiff's claim of suffering from M.S. when she called Plaintiff to see how she was doing, (See Docket No. 42-1 p. 16) and none of the doctors' notes or FMLA leave forms provided in the

record reference Plaintiff's M.S. (See Docket No. 40-4; Docket No. 37-3). Plaintiff has failed, therefore, to present any evidence showing that Plaintiff was diagnosed with M.S., and, if so, that Defendant knew that Plaintiff had been diagnosed with M.S.

Even when viewed in the light most favorable to Plaintiff, the facts indicate, at most, that Defendant knew Plaintiff needed to prepare for, undergo and recover from back surgery. As such, Plaintiff has not established that Defendant perceived or regarded Plaintiff as having M.S, and, therefore, it could not have discriminated against her based on that condition. Thus, all of Plaintiff's claims for disability discrimination under the ADA, including discrimination based on Defendant's demotion, termination, failure to hire and failure to accommodate, will be dismissed.

### c. ADA Retaliation Claim

The ADA prohibits retaliation against an individual because she opposes her employer's disability discrimination. 42 USC § 12203(a). See also, Johnson v. University of Cincinnati, 215 F.3d 561, 578 (6th Cir. 2000). To establish a prima facie case of retaliation under the ADA, plaintiff must show that "(1) she engaged in protected activity, (2) defendant took an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action. Barrett v. Lucent Technologies, Inc., 36 Fed. Appx. 835, 841 (6th Cir. 2002). If the plaintiff establishes this prima facie case, the burden shifts to the defendant to establish a legitimate, nondiscriminatory reason for the adverse employment action. Id. The plaintiff must then demonstrate by a preponderance of the evidence that the proffered reason was a mere pretext for discrimination by showing that "(1) the proffered reasons have no basis in fact, (2) the proffered reasons did not actually motivate the action, or (3) they were insufficient to motivate the action." Id.

In her complaint, Plaintiff alleges that she was retaliated against "because of her disabilities, request for leave and complaint of discrimination." (Docket No. 1 ¶ 17). Plaintiff's Response to Defendant's Motion for Summary Judgment and her Statement of Undisputed Facts does not lend further clarity or specificity to her ADA retaliation claim. Indeed, Plaintiff does not even address the ADA retaliation claim in her responsive briefs; rather, Plaintiff's only discussion of retaliation concerns her FMLA retaliation claim. Defendant, however, suggests that Plaintiff's claim is only based on two alleged instances of protected activity, including Plaintiff's EEOC disability discrimination complaints and a statement Plaintiff made to Defendant's representative, Jason Guy, regarding her termination. Under these circumstances, this Court will assume that Plaintiff's ADA retaliation claim is based on the following: (1) the statement she made to Guy regarding her termination, (2) her request for medical leave, and (3) her EEOC discrimination complaints.

Plaintiff's statement to Guy and her request for medical leave are not actionable under an ADA claim for retaliation because they are not protected activities. Specifically, Plaintiff has failed to show how either activity is in opposition to Defendant's alleged disability discrimination. See 42 USC § 12203(a). The only reference the Court could find in the record regarding Plaintiff's statement to Guy is in Plaintiff's response to Interrogatory No. 15. In that response, Plaintiff states that she "spoke to Jason Guy about my complaint of being terminated." (Docket No. 34-3 p. 7). When determining whether a communication is a protected activity under the ADA, a plaintiff must "articulate opposition to what she reasonably believes to be unlawful activity." Barrett v. Lucent Technologies, Inc., 36 Fed. Appx. 835, 842 (6th Cir. 2002). Plaintiff's assertion that she complained to Guy about being terminated does not show that

Plaintiff complained about or opposed disability discrimination. Thus, Plaintiff's statement to Guy does not constitute protected activity under the ADA.

Similarly, Plaintiff's request for medical leave does not constitute opposition to the Defendant's alleged disability discrimination. None of Plaintiff's leave request forms evidence Plaintiff complaining about anything, and there is nothing else in the record to show that Plaintiff's requests for medical leave were accompanied by any kind of complaint or opposition related to disability discrimination.

Although the charges of disability discrimination Plaintiff filed with the EEOC are protected activities, they do not help Plaintiff make a cognizable claim for retaliation under the ADA. Plaintiff did not file her EEOC charges until November 3, 2010 and January 6, 2011. (Docket No. 41-3 p. 20-21). By this time, any adverse employment action would have already occurred. For example, it is undisputed that Plaintiff was demoted to PRN status at the end of her leave in May 2010 (Docket No. 48 ¶¶ 36-37), Plaintiff applied for the position of authorization nurse coordinator on June 10, 2010 (Docket No. 48 ¶ 86), and Plaintiff was terminated on July 23, 2010 (Docket No. 48 ¶ 51). Under these circumstances, Plaintiff cannot demonstrate that her EEOC charges, which were filed after Defendant's alleged adverse employment actions, caused any adverse employment actions to occur. Thus, Plaintiff's claim for retaliation under the ADA will be dismissed.

### d. FMLA Interference Claim

The Family Medical Leave Act ("FMLA") entitles an eligible employee to as many as twelve weeks of leave during any twelve-month period if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." Hoge v. Honda of America Mfg., Inc., 384 F.3d 238, 243 (6th Cir. 2004) (quoting

11

29 U.S.C. § 2612(a)(1)(D)). One definition of "serious health condition" under the statute is "an illness, injury, impairment, or physical or mental condition that involves continuing treatment by a health care provider." Id. An employee seeking to use FMLA leave must notify the employer that FMLA-qualifying leave is needed. Id. One theory for recovery under the FMLA is an "entitlement" or "interference" theory arising from 29 U.S.C. § 2615(a)(1) which provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter." Id. at 244. Plaintiff alleges an interference theory based on Defendant's alleged interference with her right to take FMLA leave.

To prevail on her interference claim, Plaintiff must establish that: (1) she was an eligible employee, (2) Defendant is a covered employer, (3) she was entitled to leave under the FMLA, (4) she gave Defendant notice of her intent to take leave, and (5) Defendant denied her FMLA benefits or interfered with FMLA rights to which she was entitled. Id. In this case, the only element in dispute is the fifth.

Defendant is entitled to summary judgment on Plaintiff's claim that Defendant interfered with her right to take FMLA leave because it is undisputed that Plaintiff received a full twelve weeks of leave. Specifically, it is undisputed that Defendant gave Plaintiff unpaid leave from January 1, 2010 through May 3, 2010. (Docket No. 51 ¶¶ 21, 37). This is more than the 12 weeks required under the FMLA. See 29 U.S.C. § 2612(a). As such, any claim that Plaintiff was denied FMLA leave is untenable and cannot survive a motion for summary judgment. See Shelton v. Bridgestone Metalpha, U.S.A., Inc., 2012 WL 1609670 (M.D. Tenn. May 8, 2012) (finding where Plaintiff admitted she received the full extent of her FMLA leave, any claim that Plaintiff was denied FMLA leave is moot.)

The FMLA, however, not only grants the statutory right for an eligible employee to take up to twelve weeks of leave, but also creates the concomitant right for an employee who has taken leave "to be restored by the employer to the position of employment held by the employee when the leave commenced." Hoge, 384 F.3d at 244 (quoting 29 U.S.C. § 2614(a)(1)(A)). Though Plaintiff's argument is not entirely clear in this regard, the Court gleans from Plaintiff's Response that she believes Defendant converted her from full-time status to PRN (part-time) status and "purposefully did not schedule her due [sic] her FMLA leave." (Docket No. 46 p. 21-22). Plaintiff also argues that converting her to PRN status and failing to schedule her ultimately resulted in her termination. (Docket No. 46 p. 23). Thus, Plaintiff argues that she was denied reinstatement to her former position upon her return from FMLA leave, and this demotion led to her termination.

Defendant did not violate Plaintiff's right to reinstatement under the FMLA, however, because the undisputed evidence shows that she was not released to return to work at the end of her FMLA leave. The Sixth Circuit has held that an employer does not violate the FMLA when it fires an employee who is unable to return to work at the conclusion of the twelve-week period of statutory leave. Edgar v. JAC Products, Inc., 433 F.3d 501, 506-07 (6th Cir. 2006). See also, Cehrs v. Northeast Ohio Alzheimer's Research Center, 155 F.3d 775, 784-85 (6th Cir. 1998) (finding that where plaintiff was not released to return to work until two weeks after her FMLA leave period ended, evidence showed that plaintiff was unable to return to work within the period provided by the FMLA and defendant was entitled to summary judgment). In this case, Plaintiff's FMLA leave began on January 21, 2010 and ended, twelve weeks later, on April 15, 2010. On April 15, 2010, Plaintiff told Defendant she would need leave until May 17, 2010; however, Defendant only agreed to provide additional leave through May 3, 2010. On May 4,

13

2010, when Plaintiff did not return to work and was not released to return to work, Plaintiff was demoted and eventually terminated. (Docket No. 51 ¶¶ 40, 42). The Defendant does not violate the FMLA by demoting and terminating Plaintiff after she was given her full FMLA leave and where it is undisputed that Plaintiff was unable to work until at least 14 days after she exhausted her leave. As such, Defendant is entitled to summary judgment on Plaintiff's FMLA interference claim.

### e. FMLA Retaliation Claim

FMLA retaliation claims impose liability on employers that act against employees specifically because those employees invoked their FMLA rights. Edgar, 443 F.3d at 508. The Sixth Circuit applies the familiar burden-shifting test articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) to retaliation claims under the FMLA. Id. Plaintiff must make out a *prima facie* case of retaliation by showing that (1) she availed herself of a protected right under the FMLA by notifying Defendant of her intent to take leave, (2) she suffered an adverse employment action, and (3) that there was a causal connection between the exercise of her rights under the FMLA and the adverse employment action. Id.

There is no dispute that Plaintiff engaged in a statutorily protected activity by taking FMLA leave and suffered an adverse employment action when she was demoted to PRN status and eventually terminated. Defendant disputes the third element regarding a causal connection between Plaintiff's exercise of her FMLA rights and her demotion and termination. However, the nearness in time between Plaintiff's return from her FMLA leave and her demotion and termination suffice to meet the low threshold of proof necessary to establish a *prima facie* case of retaliatory discharge under the FMLA. See Seeger v. Cincinnati Bell Telephone Co., LLC, 681 F.3d 274, 283 (6th Cir. 2012).

If Plaintiff establishes a *prima facie case*, the burden shifts to Defendant to proffer a legitimate, nondiscriminatory rationale for discharging Plaintiff. Edgar, 443 F.3d at 508. Here, Defendant's stated reason for Plaintiff's demotion to PRN status is that Plaintiff was put on PRN status "when she wasn't release[d] to work at the end of her medical leave." (Docket No. 48 ¶ 37). The Sixth Circuit has held that this type of reason, when combined with medical information showing that the employee could not return to work, rebuts an employee's *prima facie* case of retaliation. Edgar, 433 F.3d at 513-14 (finding that in retaliation cases where the medical information known to the employer prior to the termination decision shows that the employee could not return within 12 weeks, an employer does not violate the FMLA when it terminates the employee.") Here, it is undisputed that Plaintiff's doctor did not release her to return to work until after her medical leave was exhausted. Thus, Defendant has rebutted Plaintiff's *prima facie* case in this regard.

Defendant's stated reason for terminating Plaintiff is that she was terminated pursuant to Defendant's policy that a PRN who did not work two shifts in 30 days was subject to termination. Plaintiff does not dispute this policy; rather, she argues that she was retaliated against by not being offered or assigned any shifts, which ultimately resulted in her termination. Defendant says that the reason Plaintiff was not offered any shifts was because there were no shifts available for Plaintiff during that time. Specifically, Defendant says that there were no shifts available because, during Plaintiff's absence, Defendant reduced the staff scheduled for each shift from three to two, Defendant preferred RNs over LPNs (Plaintiff's position) to staff the call center where Plaintiff worked, and at least one RN had to be scheduled per shift. Defendant, has, therefore, articulated a legitimate reason for terminating Plaintiff.

Once the defendant articulates a reason, the burden shifts back to Plaintiff to show that Defendant's proffered reason is a pretext for unlawful retaliation. As indicated, Plaintiff may show pretext by showing (1) that the proffered reason had no basis in fact; (2) that the proffered reason did not actually motivate her firing; or (3) that the proffered reason was insufficient to motivate the adverse employment action. Tingle v. Arbors at Hilliard, 692 F.3d 523, 530 (6th Cir. 2012) (citing Romans v. Mich. Dep't of Human Servs., 668 F.3d 826, 839 (6th Cir. 2012)).

Plaintiff has offered evidence sufficient to raise a genuine issue of material fact regarding whether Defendant's legitimate reasons for terminating her are a pretext for retaliation under the FMLA. Specifically, Plaintiff argues that Defendant's contention that there were no LPN shifts available during the 30 day period in question has no basis in fact. Plaintiff points to the deposition of her co-worker, Cynthia Mayberry, who testified that Plaintiff called her to inquire about shift availability for part time LPNs. Mayberry says that during the call, there were several LPN shifts available, and, after the call, Mayberry told Owens that Plaintiff wished to be placed on the schedule. This testimony is enough to raise a genuine issue of material fact as to whether Defendant's legitimate reason for termination has any basis in fact. As such, Plaintiff's claim that her termination constituted retaliation under the FMLA will survive summary judgment.

Because Plaintiff has offered evidence that Defendant's reason for Plaintiff's termination might be pretextual, it can be inferred that Defendant's demotion might have been part of a larger plan to first demote Plaintiff to PRN status, and then deny her shifts so that she could be terminated pursuant to Defendant's policy. Plaintiff's claim that her demotion constituted retaliation under the FMLA will, therefore, also survive summary judgment.

Finally, Plaintiff claims that she was retaliated against when Defendant did not hire her for the position of authorization nurse coordinator. (Docket No. 41-3 p. 21) (Docket No. 48 ¶

16

82). Plaintiff applied for this position after she took FMLA leave and after she was terminated. Because Plaintiff has failed to offer evidence sufficient to raise a genuine issue of material fact regarding whether Defendant's legitimate, nondiscriminatory reason for not hiring Plaintiff was pretextual, this claim must be dismissed. It is undisputed that Plaintiff was not qualified for the position of authorization nurse coordinator because she did not have insurance experience in billing, authorization, and eligibility. (Docket No. 48 ¶ 73). Plaintiff does not offer any evidence that would establish that Defendant's legitimate reason was a mere pretext for retaliation. Thus, Plaintiff's retaliation claim regarding Defendant's failure to hire her for the position of authorization nurse coordinator will be dismissed.

### III. CONCLUSION

On the basis of the foregoing, Defendant's Motion for Summary Judgment will be granted with respect to all claims except Plaintiff's claim that her termination and demotion constituted retaliation under the FMLA.

An appropriate Order will enter.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE